Whitaker, Judge,
delivered the opinion of the court:
The plaintiff sues to recover an amount alleged to be due- *334 it for bot water radiation furnished the defendant on the Cincinnati Suburban Resettlement, Greenhills, project. The plaintiff claims it furnished 176,2095/12 square feet of radiation, whereas it has been paid for only 148,299.69 square feet.
Plaintiff’s computation is based on the catalogue ratings of the radiators furnished. These ratings are based on the number of British Thermal Units of heat the radiators are supposed to radiate. One hundred fifty British Thermal Units are figured as one square foot. Plaintiff furnished radiators of a capacity of 26,431,412.5 British Thermal Units. This is' equivalent to 176,2095/12 square feet based on 150 British Thermal Units being equal to one square foot. The actual physical measurement of the radiating surface in the radiators furnished was 148,843.66 square feet.
Plaintiff was paid for 148,299.65 square feet, less a discount of 5 percent. The defendant concedes that plaintiff is entitled to recover for the difference of 544.01 at $0.2023 per square foot, totalling $110.05, less the 5 percent discount.
Plainly plaintiff is not entitled to recover on its basis of computation. The contract expressly provided:
All radiation must be furnished in accordance with the United States Bureau of Standards measurements, and not catalogue ratings.
Plaintiff’s computation admittedly is based on catalogue ratings, and it is also admitted that the physical measurement of the heating surface of the radiators was 148,843.66 square feet. This was the Bureau of Standards’ basis of measurement. This was admitted by plaintiff’s witnesses, and they admitted they knew this when the bid was made. Their insistence was that this was not the proper basis of measurement. This is immaterial. It was the basis agreed on, proper or not.
The next question is whether or not the five percent discount should have been deducted. The invitation for bids and the bid and its acceptance form the contract. The printed form of bid recites:
Discounts will be allowed for payments as follows: 10 calendar days-percent; 20 calendar days,percent; 30 calendar days-per cent.
*335 The plaintiff struck the figure “10” in the foregoing and wrote above on the typewriter “15 days proximo” and in the blank before “percent” typed “5.” The blank following “20 calendar days” remained blank, and the word “net” was typed in the blank following “30 calendar days.”
The bid was made subject to the conditions on the back. Condition No. 2 reads:
Time, in connection with discount offered, will be computed from date' of the delivery of the supplies to carrier when final inspection and acceptance are at point of origin, or from date of delivery at destination or port of embarkation when final inspection and acceptance are at those points, or from date correct bill or voucher properly certified by the contractor is received if the latter date is later than the date of delivery.
Defendant says it is entitled to the discount because plaintiff never submitted a correct invoice.
It is true that plaintiff never submitted a correct invoice. On January 19,1937, plaintiff submitted an invoice for 31,100 square feet. On the 26th of January defendant advised it that it had used catalogue ratings to figure the number of feet, and that it had delivered only 25,675 square feet based on Bureau of Standards’ measurements. Plaintiff did not correct its invoice. On May 12, 1937, it submitted final invoice for all radiators delivered, including those invoiced on January 19. This was on the same incorrect basis. Plaintiff has never submitted an invoice on the correct basis.
Was this a sufficient excuse for the defendant’s failure to pay the bill in fifteen days? If it was, the defendant is entitled to the discount.
Apparently the practice followed by the defendant in paying its bills varies with its several departments. Upon receipt of an incorrect bill, some of the departments will attach to it what they call a “Statement of Differences” showing the difference in the defendant’s computation of the amount due and the claimant’s, and forward both to the Treasury Department with an authorization to that department to pay the amount admittedly due. In others, the bill is returned to the claimant with a statement of what the defendant thinks is wrong with it, and a request that a correct bill *336 be submitted. If the parties are unable to agree on the amount due, no payment at all is made by the department, but the controversy is referred to the Comptroller General for settlement. In no case is payment made by the department until there is received what the department considers a correct bill.
The contract was drawn in the light of the latter practice. The submission of a correct bill being necessary before the department could or would make payment, it provided that discount time should begin to run on this date and not before.
No “correct” bill having been submitted, the defendant was entitled to the discount at the time settlement was made.
The plaintiff is entitled to recover of the defendant the sum of $104.55. It is so ordered.
Madden, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.
Jones, Judge, took no part in the decision of this case.